ASHTON GLASSELL COMPANY, INC., *v.* MANSFIELD LUMBER COMPANY.

Opinion delivered May 25, 1931.

*James B. McDonough,* for appellant.

*A. M. Dobbs,* for appellee.

MEHAFFY, J. This action was begun in the Sebastian Circuit Court by appellee to recover from the appellant on a breach of contract. There were two counts in the complaint, in one of which it was alleged that the appellant entered into a contract with appellee to purchase from appellee all form lumber used in the construction

of the Ward Hotel at Fort Smith. In the other count it was alleged that the appellant agreed to purchase from appellee all the cement required by the said appellant in the construction and building of the said hotel at a price of $2.75 per barrel, less 10 cents per barrel discount, and a deduction of 10 cents per sack on the return of the sacks used.

Appellee alleged that this was a verbal contract, and that appellant afterwards forwarded to appellee a written statement accepting the proposals and agreeing to purchase from appellee said materials, and that this writing consummated the verbal contract.

The following is the written statement referred to:

"March the 30th, 1929.

"Mansfield Lumber Company,
    "Ft. Smith, Arkansas.
        "Att. Mr. Caldwell

"Gentlemen: This will serve as an acceptance of your proposal to furnish us with the necessary form lumber for the Ward Hotel, Ft. Smith, at the price of $27.50 per M f.o.b. job, delivered as ordered by our job force. It is further understood that the cement is to be handled through you as dealer on a basis of your quotation of $2.75 less 10 and 40 delivered to us if there when needed.

"Please sign and return one copy for our files.

"Yours very truly,

"The Ashton Glassell Co., Inc.

"AG:WEM          "By Ashton Glassell,

"President."

"Accepted: Mansfield Lumber Co.,
    "By A. B. Caldwell."

Appellee alleged that there was a breach of contract, and that it was damaged thereby 20 cents per barrel on 5,000 barrels.

Appellant demurred to appellee's complaint. The demurrer was overruled, and appellant then filed answer denying the material allegations in the complaint.

There was a trial by jury and a finding in favor of appellant as to the lumber, but the jury returned a verdict in favor of appellee for $250 for a breach of the cement contract.

Motion for new trial was filed, overruled, and exceptions saved, and the case is here on appeal.

The evidence showed that A. B. Caldwell, yard manager for appellee, had a conference with Ashton Glassell, president of the Ashton Glassell Company, Inc., and that the price of lumber and cement was discussed, and the witnesses, on the part of the appellee, testified that there was a verbal agreement entered into under which appellant was to purchase through appellee the cement to be used in the Ward Hotel; that Caldwell told Glassell that they handled Dewey cement, and that Dewey cement would be furnished; that Glassell said he had one car of Marquette cement en route, but would not buy any more. These witnesses testified that the parties agreed on Dewey cement.

The appellant's testimony tended to show that appellant agreed to take Dewey cement if Hutto and Caldwell would sell $5,000 worth of stock in the hotel. This is denied by appellee's witnesses.

The evidence of Glassell was to the effect that he did not at any time authorize appellee to buy Dewey cement. On April 23, 1929, appellant wrote a letter to appellee stating that it seemed impossible to get appellee to handle Marquette cement, but that it was its custom to use the material that it purchased rather than use some particular brand that it was customary for appellee to handle, and that, as explained to the writer, the only cement that appellee would handle was the Dewey cement. The letter closed with the statement: "Since the above conditions exist, we feel that this action is the only one to take. It will save both of us embarrassment and is a happy solution, and we are taking this step." The letter was signed by the president of the company.

It is first contended by appellant that the instrument sued on is not a contract between appellant and appel-

lee for the purchase and sale of cement. A contract may be defined as an agreement between two or more persons upon sufficient consideration to do or not to do a particular thing. The letter introduced in evidence states that it will serve as an acceptance of appellee's proposal to furnish necessary lumber, etc., and the letter then states: "It is further understood that the cement is to be handled through you as dealer on a basis of your quotation."

This letter is signed by the appellant and accepted by the appellee. It clearly shows that appellee made a quotation of prices, and that the appellant stated that it was the understanding that the cement was to be handled through appellee and delivered to the appellant. That necessarily means that the appellee was to deliver the cement to the appellant at the price or quotation named in the letter.

The appellant states in its brief that it contended in the lower court and contends now that the writing became a contract, but that it did not bind it to buy any cement from appellee. It is contended that it contained no obligation on the part of the appellant to purchase the cement. We do not agree with appellant in this contention. The writing introduced shows an agreement on the part of the appellant to purchase the cement at the price named, and on the part of the appellee to deliver it to appellant when needed. We therefore think that the writing constituted a contract of purchase and sale.

Appellant cites to support its contention *Slayden* v. *Augusta Cooperage Co.*, 163 Ark. 638, 260 S. W. 741, and the court said: "The contract, as alleged, left it entirely optional with the appellant as to whether he would put out any logs for the appellee. There was nothing to bind him to put out any amount of timber etc."

In the instant case, under the contract in evidence, the appellant was bound to purchase, and the appellee was bound to deliver, the cement. The appellant argues that the agreement was to handle through the appellee

as dealer, and that that leaves the appellant the right to select the cement, and that it was not a contract to buy from the appellee. The contract merely provided for cement and did not specify the kind of cement to be used. But, under the contract, appellant agreed to take and appellee agreed to deliver the cement.

We do not agree with the appellant that the evidence of Caldwell, Hutto and McConnell was inadmissible. We think this testimony was competent. It is a well-settled rule that parol evidence is not admissible to contradict or vary the terms of a written contract, but it is equally well settled that parol evidence is admissible to identify the subject-matter of a contract where it does not contradict the terms of the writing. *Little Rock Cooperage Co.* v. *Gunnels,* 82 Ark. 286, 101 S. W. 729, 12 Ann. Cas. 293; *Kelley* v. *Carter,* 55 Ark. 112, 17 S. W. 706; *Dollar* v. *Knight,* 145 Ark. 522, 224 S. W. 983; *Moore* v. *Exelby,* 170 Ark. 908, 281 S. W. 671; *Bigelow* v. *Casper,* 145 Mass. 270, 13 N. E. 896.

The parol evidence in this case does not vary or contradict the terms of the written agreement; it is entirely consistent with the written agreement. The written agreement is for cement, but it does not identify or name the kind of cement. The evidence tending to show the kind of cement is not repugnant to the terms of the writing, but is consistent with and explanatory of them. 10 R. C. L. 1019.

"The terms of an instrument may in some cases be clear except that there may exist an uncertainty as to the subject-matter to which the writing relates and which it is necessary to, in some way, identify in order to give effect to the document with a proper degree of certainty. In such cases parol evidence will be received to enable the court to apply the writing to its subject-matter, and its admission is in no way a violation of the parol evidence rule." 5 Chamberlayne on Evidence, 4973.

The evidence clearly shows that the parties discussed the kind of cement to be used, and appellee's testi-

mony clearly shows that the cement agreed on was Dewey cement, and that appellee had already ordered the cement when it was notified by appellant that it intended to use Marquette cement. As to whether the kind agreed on by the parties was Dewey cement was a question of fact for the jury.

What we have already said answers the contention of the appellant that the contract was oral and void because of the statute of frauds.

We have carefully examined the instructions given as well as those requested by appellant, and have reached the conclusion that there was no error in giving or refusing instructions, and that the questions of fact were properly submitted to the jury, and that the jury's verdict is sustained by substantial evidence.

The judgment is affirmed.